We are going to now call the case of 524-1004, People v. Eric Powell. Alright, is the appellant ready, Ms. Saba? Okay, I apologize for that. I promise, I filed everything. Okay, good morning. May it please the court. Counsel. My name is Shea Saba, and I represent the defendant appellant, Mr. Eric Powell. This case is about officers using the label knock-and-talk to justify conduct that went far beyond what the Fourth Amendment allows. Here, officers were investigating the reported theft of an hydrosamonia based on a call received around 7.30 a.m. that morning. The limited information provided by the witness led officers to Mr. Powell's property. Nearly 10 hours later, around 6 p.m., officers decided what they called in this case a knock-and-talk. They admitted they chose a knock-and-talk because they did not have probable cause for a search warrant. Nevertheless, six officers entered the property through the supposed consensual encounter. Some unlawfully entered the curtilage, others bypassed the front door, while others ranged around the property for approximately 15 minutes. Only after the officers surrounded the home did Officer Hales finally approach the back door to knock. Weren't there multiple entrances to this residence? Yes, Your Honor. There were multiple entrances. However, the case law in Florida v. Jardines has made it clear that officers need to approach by the front path, and Detective Hales, the lead detective himself on this case, said there was only one entry onto the property, the gravel driveway. But, Counsel, I'll be honest. I looked at the video, and I can't tell which door is which. I mean, I'm just going to be plain with you. How are they supposed to know? Because I certainly don't know at this point. Help me understand that. Yes, Your Honor. Based on the gravel driveway, which, while it seems it is a little vague, but social norms call that you are supposed to look at the situation, and the only pseudo-formal indicator, I would say, was the gravel driveway. The rest of it was driven paths that Mr. Powell had used to his own enjoyment of his property to go around his property. That does not mean that one can enter a curtilage however one pleases. Florida v. Jardines says you need to enter by the front path. Where was the red truck parked in relationship to the door? Yes, Your Honor. The red truck was parked in the rear curtilage. However, Detective Hale says that makes it the front door. But that logic is flawed, because if you were to go by where a truck is parked, wherever it is on the property, then that means every single homeowner, no matter whether they're a farm, a ranch, a suburban home, a city home, that that means everyone has the same identical habit. But once you see the video and the entry that they took from that back, whatever back porch, front porch, whatever you call it, it opens into the main living area. Wouldn't that presuppose that that was used as the front door then? I mean, what impact does that have on us? Your Honor, I would also point out that the front door, which is on the east side of the home, to get it carved in the direction, sorry, the front door also opens into that exact same area. I thought it opens into the kitchen area. Well, if you re-look at the video, Your Honor, you'll see that it's actually an open concept, not to get too detailed, but it is an open concept home. So the kitchen and the living room are one of those that kind of blend. However, you can see the front door through, especially when the officers decide to unlawfully enter, where they shouldn't have been in the first place. But where they unlawfully enter, you can see that door, and it opens straight into the living room on the left and the kitchen on the right. Okay. Talk about this entry, what you're describing as an unlawful entry. Yes, Your Honor. That takes me to what I would say is the first violation that occurred. Detective Johnson and Deputy Wade, they did not use the main driveway like ordinary visitors. Instead, they parked on the public road and walked south along the western edge of the property with no public interest, and it's marked by calf-high grass when you look at the video. That conduct exceeded what an ordinary private citizen would do. The Jardines Court makes it clear that this law is upheld by, you know, and is done simply by Girl Scouts and trick-or-treaters, and as the State points out, they're homeless witnesses. You're not going to have an ordinary visitor walking through grass to get to someone's front door. They're going to go by the driveway, even if it is a little overgrown, if we want to point that out. They're still going to take the path that is clearly marked. So the cut green garden hose, which was observed on the western side of the house, that becomes central to the State's theory, and it was observed only after officers were physically present in an area where Jardines said they had no right to be. That alone exceeded the implied license, and that observation was the product of an unconstitutional search and must be suppressed. The second violation. When the green hose was found across, it was in the grass, in the weeds, but it was as if you would come out a door to the mobile structure, the mobile home, because it did have four doors, as I recognized in the video, but you wouldn't come out a door to see that hose, right? Your Honor, no. From what I could see from the videos, if I was to rewatch them, Detective Hales and Detective Johnson and Deputy Wade, excuse me, they had to go a little further out. It wasn't right outside the door. It was in the grass, in my opinion, clearly away from the home, and they admitted they could see it. It was beyond the hermitage of the home? No, Your Honor. It was still in the hermitage. I apologize. It was still in the hermitage. However, it was not directly observable if you were to come out of one of those doors.  The officers also admitted, and I want to point this out as well, that they could not see it until they entered the property. They could not see it while they surveilled from the neighboring property. They had to walk around the property to see it. So the second entry, those officers entered via the gravel driveway, and they ended up exactly where an ordinary visitor would, the front door. But they never knocked there. Instead, Hales walked past the front door, then walked past the back door, went over to the west side, and then turned around and decided to go back to the back door and porch. Had somebody come out of that door? After they were already illegally on the curtilage, Your Honor. Well, regardless of whether they were there legally or illegally, they observed somebody coming out of that door. Yes, Your Honor. Right? And can you then infer that that might be a door that's the front door? No, Your Honor, because this court in Cochran specifically said that anyone can avoid what is supposed to be a consensual encounter with the police. They can use any door to their disposal to avoid this encounter. So no, that does not make it the front door, Your Honor. The one thing that I noticed in the video is that there's a lot of stuff in front of the door that they go in that they claim is the front door. Is that true? Yes, which I am saying is the back door specifically. It had large debris, small debris, and it's all covered in dust if you look at it. It even had a large grill, which the officers had to exert a significant amount of force, because you can hear them huffing and puffing on the video, to move from in front of that door. If you watch them go through it originally before it was moved, the officers are squeezing between a pillar and the grill. And was there a door that had nothing in front of it? Yes, Your Honor. There was a door that had nothing in front of it, and that was the front door. And is that the door you're claiming is the front door? Yes, Your Honor, because it is parallel to the gravel driveway, and it is what would have led an ordinary citizen up into that path. But it wasn't the door that the cars were parked at. Correct. That's the difference. That is the difference, and that is why the officer's, I guess, argument, his argument that that must make it the front door, it's unreasonable to assume everyone has the exact same type of thinking. So, additionally, every case that the state relies on to justify that choice, they either already knocked on the front door, then moved around, or there was a legitimate reason to go to the back door, such as noise or seeing someone already outside. None of that was here. Except for the fact that someone came out of that very door. Eventually, sir. If, hypothetically, let's say they knocked on the front door and then they came around after they heard someone come out, potentially, but that is not the facts here. They were already illegally on that back porch and curtilage when Mr. Woods came out. Further, the state's proposed rule has no workable boundary. Under its theories, officers may follow any path a homeowner has driven on or parked on and may walk around the property for as long as they deem necessary before deciding where to knock. Applied to rural properties or farms, that turns the implied license into permission to roam large portions of the curtilage. And in this case, the state goes even further, arguing that a visitor may walk the curtilage for 15 minutes before deciding to knock on a door. That is unreasonable. It does not take an ordinary visitor 15 minutes to determine where they are going to knock on a door. As Jardines said, even children do this. Jardines rejects that approach, and this court reinforced that principle in Cochran. The implied license rule... May I actually make one additional point and then conclude? Yes, you may do that. So, in conclusion, to put this in perspective, officers walk the curtilage for 15 minutes. This argument has taken 10. Under the state's theory, the officers would still be walking the property. For those reasons, because the evidence was obtained only after officers violated the Fourth Amendment, it should have been suppressed, and the conviction cannot stand. Thus, we respectfully ask this court to reverse. Thank you for your arguments. You'll have a few minutes after your opposing counsel gets to argue for us. Mr. Wade? Thank you. Ms. Steele? May it please the Court, Counsel and Becky Ray representing the people. The only issue in this case is whether the law enforcement officers violated the defendant's constitutional rights against unlawful search and seizure when they detained him inside his home without a warrant. The defendant's constitutional rights were not violated, and this court should affirm his conviction. The Fourth Amendment protects against unreasonable searches and seizures. While there is a presumption that warrantless searches are unreasonable, and thus a violation, the touchstone consideration is reasonableness. And exigent circumstances, such as the ones in this case, can overcome the unreasonableness presumption. Simply entering the curtilage of property is not a search. The defendant must show that an expectation of privacy in the area of search existed, and that that expectation is reasonable. The police are not prohibited from viewing a person's clearly visible activities in or around the home if he is in a place where he has a right to be. And this is true even if the person has taken measures to restrict views of his activities, such as fluttering a porch. The implied license here remained valid throughout the officer's 15 minutes on the property. Do you think 15 minutes was too long, as counsel suggests? I do not. I think it's dependent upon the circumstances of the case, and the totality of the circumstances here warranted that period of time for the officers to make a decision. There were four entrances to this property. There was a gravel driveway, but if you watched the defendant's video, too, there was also an area where I believe it was Detective Johnson had parked. And he approached from—I'm directionally challenged, but— he approached from the west, whereas Hales and other officers approached the main drive, as he testified, from the east. But you can see the area where Johnson approaches has also been driven on. There's a pathway there. It's not completely overgrown, as the defendant indicates in his reply. You can see dead or downtrodden grass where there's tire tracks, and there's maybe a little bit of grass or weeds in between those tire tracks and then to the exterior of those tracks. But you can clearly see there's a vehicle driven there as well. So we have, you know, two entrances that could be considered open to the public. Obviously, the one with the gravel would be more so, but that doesn't preclude the other entrance from being. And not only were there four doors, one on each side of this property, but each one of those doors was illuminated by a porch light. So while that in some cases has been the indication of a main entrance with the porch light on, how do you decide that in this case? Four doors, porch lights on. Don't you think they had enough time to knock before they saw the green hose? They were trying to decide, respectfully, Your Honor, which door they should knock on. Well, how long, I mean, how tough is that job? Well, for police officers who want to get it right, which I think these officers did, they were investigating theft of antihydrocemonia, which can be used to manufacture illegal drugs. So I don't think they were there intent on messing that up. So I think they wanted to, you know, abide by the law and do what was proper and knock on the door where that was the primary door. But also, they were there for a knock and talk. They wanted to knock on the door, which would obviously net them the most likelihood of speaking to the occupant at home. And as mentioned, the vehicles were parked in the back of that home. And based on the lots, and I believe it was Wade who had surveilled the house throughout the day, they had seen someone exit the home to recover the red pickup truck that was seen leaving the scene of the theft with a tarp. Now, they didn't indicate which door that person exited to recover the truck, but it seems logical since the truck was parked in the back, what counsel is calling the back of the property, the cluttered porch area, it seems logical that since the truck was closest to that area, that was the door they would have exited. And not only would that possibly have been, logically, have been the right door to exit, but Jeffrey would have exited that door while Hales and Johnson were still trying to decide which door. And as a matter of fact, even after having discussion with Johnson, Detective Hales started toward the west door and stopped when Johnson said, I think that the other door, the one closest to the vehicles, is the correct door. You can see that on the video. So not only was Hales having difficulty, Johnson was maybe a little bit uncertain too, and he reached the same conclusion that Hales ultimately did, that the correct door to approach was the one that was cluttered because it was closest to the vehicles. So moving on from that, I think it's very clear that the amount of time that the officers spent deciding which door to approach was reasonable, given the circumstances and the configuration of the property with the abandoned home in front of it, with garages and sheds surrounding it, with more than one entrance. I think the amount of time that they spent deciding the entrance door, the primary entrance door, was reasonable. And to that effect, Officer Hales did eventually approach that door, and the defendant opened the door and had a conversation with Detective Hales. He did tell the officers to come back with a warrant, and Hales indicated they were going to do that. And the minute that he told the defendant that they were going to secure the residence, that's when the defendant took off. And I think that becomes the other issue. I think their entry into the residence to detain the defendant was de minimis and necessary, not only for preventing the destruction of the evidence, because Officer Hales smelled a chemical smell, which to him was the smell of anhydrous ammonia, which was the very subject of the theft they were investigating. It was reasonable to believe that had officers allowed the defendant back into his home and had they not secured the residence while they were attempting to obtain a search warrant, that when they returned, that evidence would no longer be available. It was liquid. It could have been dumped on the ground, dumped in the toilet, dumped in the sink, any manner of destruction, and it would not have been available. So securing the residence was of utmost importance, not only preventing the destruction of evidence, but also officer safety. And the fact that the defendant began to retreat into his home gave Hales and the other officers reasons to detain him for that reason. They were aware of a prior criminal history. He had removed the tailgate from his truck to try and conceal the truck. He had covered it with a tarp, or someone had covered it with a tarp, to try and conceal the truck itself. They had had discussion with Jeffrey Wood, who said that he had arrived at that residence just shortly before police officers, but they knew that to not be the truth because Mouaw and Wade had observed no one other than the person trying to recover the truck with the tarp entering or exiting the home, or arriving at the home. So based on all of those circumstances, it was reasonable for officers to believe that there might be other persons present inside the home who could endanger them, in addition to the defendant, if they allowed him inside the home. So I think very clearly, for reasons of officer safety, it was necessary to detain him right inside the door, and once they did, they saw weapons, which became the basis for a protective sweep at that point. They had no idea whether there were any other persons in the residence, and they knew there was at least one weapon because it was in plain view in the living room and could be seen from the door inside, just inside his front door, where they detained him. So for all of these reasons, the motion to suppress was properly denied by the court, and the defendant was convicted, and this court should affirm that conviction. Thank you. Thank you, Ms. Ray. Thank you. The 15 minutes was not reasonable. Officers are held to the standard of ordinary citizens, and they must understand that. They need to see that it is a lower bar. They are approaching a home as an ordinary citizen because they do not have probable cause for an arrest or a search warrant. Officer Hales even said in his testimony that he said they were not ordinary people approaching this home. That's a misstatement of the law on his part. That also goes into when Detective Hales said that the defendant took off inside the home, Hales' credibility is already weakened. He said there was a dog chained to the front door. If you watch the objective footage, there is no dog chained to that front door. Additionally, as the state points out, he said he smelled a faint chemical smell. Detective Hales is not an expert. He cannot know the difference between smells. He's not testified that he knew the difference between smells. He was not entered as a witness. I mean, as an expert. Sorry, not a witness. Can't his experience as a police officer be used in that regard? It could, Your Honor, but he didn't testify as to how much experience he had to prove that. Additionally, no antidepressant was found in the home. And if you look at the video itself, there's an ATV and a motorbike. There are things in there. There was also a propane tank. There were plenty of faint chemical smells. But he insisted it was antihydrosomonia. Well, you don't have to be right to have probable cause, do you? I mean, he can say it smelled like antihydrosomonia and use that as a basis as long as it's reasonable and he has a legitimate basis. But then if he's wrong, does that nullify the probable cause? Yes, Your Honor. There's no probable cause. But that's hindsight. Oh, hindsight. Yes, Your Honor. I see what you're pointing out, and I understand. But what does the case law say on that? I do not have that in front of me, Your Honor. I apologize. Sorry. I'd be happy to file a separate case. It seems to me that if the officer legitimately believes and has a basis for that it's antihydrosomonia, which he's looking for, and he enters the house but doesn't find it, it may not destroy the probable cause. Perhaps if he was there lawfully on the back porch. Yes, but as argued earlier, he was not. I would also like to address the officer's safety concern. This court in Coffrin said that officer safety cannot be used as a blanket excuse. You need to have real reasons. And in this case, they had nothing but hunches because a non-identifying witness in a red truck, despite how suspicious it looks, that cannot bootstrap its way into probable cause. So there was no reason to be surrounding a home with six officers which, for what was supposed to be a consensual knock and talk. Additionally, for plain view, it cannot apply because the officers were not lawfully present when they made the observations they relied on, and that ended the inquiry. Further, for the accident circumstances, specifically the hot pursuit, we do not have body camera footage that shows that, and as Hale's credibility is already weakened, we do not know if he actually did take off inside the house. As we do know, my client asked for a search warrant, asked for them to come back, which ended the consensual encounter. And the rest of the evidence was not lawfully obtained. So thus, we ask this court to respectfully reverse. Do you think that the officers could enter into the home at all? Step inside the door? No, Your Honor, they were there for a consensual knock and talk. They didn't have a search warrant, and without... But they could knock and talk. They could knock and talk. Do you agree with that? Yes, Your Honor. They could knock and talk as an ordinary private citizen would do. But when they opened the door and saw that red tailgate, could that give rise to probable cause then? Because they had the truck, they knew the tailgate was damaged, there's a tailgate in plain view. Can that give rise to probable cause? No, Your Honor. One, I'm going to sound like a broken record, but they shouldn't have been there in the first place, out in that back door. Two, they needed more, and as is already discussed, that cut green garden hose was already illegally observed, and that's what they chose to leave them to the back door. So when you take out all the rest of it, the hose, the alleged chemical smell, and the tailgate, that were observed only after the officers had already exceeded the implied license, as stated, that cannot bootstrap its way into probable cause. Okay, questions? Thank you very much. Thank you both for your arguments here today. We appreciate you being a little early to get to the timing of this. The matter will continue under advisement. We'll issue an order in due course. We are temporarily in recess.